Next case for argument is 23-1326, In Re, MacroPoint. Mr. Johnson, whenever you're ready. I promise you this will not go as long as the prior argument. I expected that, Your Honor. Say to my panel, please proceed. May it please the court. My name is Mark Johnson, and I am from Renner Auto, and I'm here with my colleague, Kyle Fleming. And I'd like to talk a little bit about a board rejection of a very interesting invention that allowed for the tracking of freight. There are two reasons why the board rejected these claims. The first is a single reference obviousness rejection based on what the board deemed to be common sense. Now, we all know that this court's jurisprudence tells us that a common sense single, a common sense is typically used to provide motivation for combining two references for an obviousness analysis. What it is not typically used for is to provide a reason to modify a single reference. And that's what the court in Arundi-Apple tells us, discussing perfect web. This is exactly what the board did. The problem with this is there's a very fine line between common sense and hindsight. And the reason why. Am I thinking about it incorrectly or too crudely to think about the claim as saying, if you want to know where the truck is, a pretty good estimate is where the driver's cell phone is. That is a very broad, sweeping way of looking at the claim, but it's not inaccurate. However, it is very different from what the industry was doing at the time. And the record tells us this. So you have this reference Ensman from 2000 that was directed to using back-end cell networks to identify the location of the cell user. And notably, the applicant was Bell South. So it was a cell service provider that was going to take advantage. And the other reference is UPS, right? Trucks. Yeah. So Bell South saw this opportunity to take advantage of changing law, in which information regarding the locations of cell phones is going to become accessible to third parties. So Bell South said, hey, we've got this system. Let's improve this. The existing technology at the time had specialized systems that required specialized networks. And that's the key here. These systems needed specialized networks in order to track trucks, people, whatever. So not only did you need specialized front-end devices that utilized GPS or some form of tracking technology, you needed specific back-end devices. And Ensman was directed to solving that problem, which did. And it also solved some of the problems that would otherwise be associated, such as getting permission from a user to track them using their device. That's 2000. There's no dispute. Ensman teaches tracking a user based on the location of a device. And there's really no dispute that a user could be a worker, could be a driver of a car. What Ensman doesn't teach is correlating a user's cell phone with a vehicle rather than the user. And that was the invention that came around with Mr. Edelman and MacroPoint in 2012. Prior to that, there was a whole transition in technology boom in this industry. And Davidson teaches us about that. What Davidson shows us is that there was this massive push to get more and more and better information in the industry. They didn't just want to know where the driver was. They didn't just want to know where the truck was. That wasn't good enough. They wanted telematics data. They wanted efficiency data. They wanted to know how long the engine was idling. They wanted to know. Davidson also teaches that a cell phone can be collecting and transmitting telematics data, right? Of the driver, yes. And Davidson recognizes that. Well, it telematics data. And then the reference defines what telematics data is. And it includes, among other things, vehicle location. It does. And so why wasn't that a reasonable reading of the reference by the examiner on the board that you put those two Davidson statements together, Davidson's teaching using a cell phone, a truck driver's cell phone, to send, among other things, information about the truck's location? Well, I think that when you read Davidson in its entirety, it's very clear that that's not what Davidson was doing. What Davidson was saying is, we recognize that the driver and the truck aren't always located at the same position, in the same location. And we want information about idling. If the vehicle's idling, we want to know why. Is it because the driver left the vehicle running to go deliver a package? Is it because the driver's stuck in traffic? So it's helpful to know, in addition to the location of the vehicle itself, where's the driver at that time? That's what Davidson was doing. But if they were doing the same thing, maybe they had a different purpose in doing it. But why does that take it out of the realm of the prior art that we can consider relevant for our purposes here? MacroPoint's position, Your Honor, is that neither reference does what is claimed, which is associating the location of a mobile device with the truck. Davidson associates the location of a mobile device with the driver. Ensman associates the location of a mobile device with the worker, which could be a driver. So there's actually no reason to combine Davidson with Ensman, because it just discloses the same technology and uses it in the exact same way. Putting them together, you still don't arrive at the claimed invention. And what is the missing element again? The missing element is associating the location of a, using the location of a mobile device to estimate the location of a vehicle. But what about what I just said about Davidson's teaching, about the phone sending telematics data, about Davidson defining telematics data as being, among other things, data about the vehicle location? I mean, those are two statements right out of Davidson. The board and the examiner used those two statements to say, well, Davidson's teaching a lot of things, but one of the very reasonable takeaways is that the phone is sending vehicle location. Information because that's one type of telematics data that the phone is explicitly sending. I believe you're referring to paragraph 30 of Davidson, Judge Chen. And I think that's where we have the big dispute, right? Both parties cite the same paragraph. Right, but my point is under the standard of review, you have to somehow establish that this was an unreasonable reading of the reference, that there's just no substantial evidence to support this reading. And so this is a fact question, and once we get to this point, it's hard to overturn fact findings. Understandable, Your Honor. I hope to do that today. First of all, in all of the embodiments disclosed in Davidson, the telematics data is collected by the telematics device and sent somewhere, right? One of the places it's sent is over Bluetooth or some other technology to the PDA, which we can refer to as a mobile phone. They're effectively the same thing. Then the mobile phone or PDA will send it back to the back-end servers. So when you talk about the mobile phone sending telematics data, it's telematics data that was derived from a sensor in the truck that provides truck-specific locations. It's not location information of the driver or the PDA itself that's being sent in that situation. Paragraph 30 that was hotly disputed talks about it. It says, according to one embodiment, in addition to receiving telematics data from the telematics device 102, and that's what we were just talking about, the PDA may be further configured to collect and transmit telematics data on its own. And then it goes on to say that that telematics data is the location of the user. And it said, in particular embodiments, as discussed in more detail below, this location-determining device may be used to gather information regarding the location of the driver, him or herself, as opposed to location information associated with the delivery vehicle 100, which may be collected, parentheses, or determined by the telematics device. So what it's saying is, in addition to collecting this information using these vehicle-specific location sensors, it's desirable in some embodiments to also locate the driver, for different reasons. I do not believe a reasonable reading of this paragraph encompasses estimating the location of a vehicle based on the location of the PDA. In fact, it says the opposite. And that's our substantial evidence argument with respect to Davidson. And that's really the crux of the argument. Okay, why don't we hear from the office, and then we'll be seeing from you. Thank you. Thank you. Good morning, your honors. May it please the court. I'd like to continue the conversation about paragraph 30 of Davidson. This is at 8PPX905. As Judge Chen was pointing out, Davidson does talk about an embodiment where the telematics device, which is located in the vehicle, it says, in addition to receiving telematics data from the telematics device 102, the portable data acquisition device 110, which is the mobile phone, may be further configured to collect and transmit telematics data on its own. And as you pointed out, telematics data is data about the vehicle, including the location of the vehicle. Davidson teaches that. And they give one example of how this portable device can collect and transmit telematics data. And that's in the next sentence. It says, for example, according to one embodiment, the portable data acquisition... Where at the top? Your... 905. 905, right. Paragraph. This is paragraph 30. 30. Yeah, at 8PPX905. And it gives this one example, and this is at the top of page 8PPX905, the second column. It says, for example, according to one embodiment, the portable data acquisition device 110 may include a location determining device, such as a global positioning system GPS device. And then it goes on to say, after that, this other, in particular embodiment, he may do something different, where you could track the location of the driver and the vehicle, where the phone would track the location of the driver, and the telematics device would track the location of the vehicle. But it doesn't give this one very specific example of how you could use that portable device to track the telematics data on its own. And it gives that specific example of location as being one type of telematics device. Is there any other kind of telematics data that a cell phone could collect and transmit other than using its own GPS as a stand-in for the location of the vehicle? Presumably, if the driver's in the vehicle and you have this location device, you could probably tell the speed of the vehicle, potentially, by how fast the phone is moving. They don't give examples of that, but they do give this one specific example of the location. It's possible that the phone could, there are sensors on the vehicle. Right, I mean, there's several different types of telematics data that's identified in Davidson Reference, and I don't think it would be your position that the cell phone itself could somehow, on its own, collect all of that different type of telematics data and then transmit that, right? I don't think so. I think... You don't have to, but I'm just trying to figure out what's the best understanding of Davidson when it talks about the phone vis-a-vis telematics data. Yeah, I think one reasonable interpretation... Because one theory is, the other side's theory, is that it's doing nothing more than collecting the telematics data being collected by the telematics device in the truck and then serving as a communication vehicle of taking that telematics data from the telematics device and then sending it on to some central server. Yeah, and I think one interpretation could be, instead of using the telematics device 102 to collect this data from sensors, Davidson says you have sensors in the vehicle that can provide information about the seatbelt status or RPMs or the speed of the vehicle and whether you're stopping. You could just send that data directly from the sensors, potentially, to this portable data acquisition device. But again, it does give the one specific example of location being one type of telematics device. And it says the phone does have the GPS location. And in this case, that's sufficient to meet the claim limitation. And then, turning back to Ensman by itself, suggesting that limitation. Ensman discloses in the prior a location tracking system for fleet vehicles, and it talks about- This was a pretty conclusory invocation of common sense by the board here. I mean, it was alarmingly, I don't know, confusory. It was relatively short, and I think they mentioned- Couldn't be shorter. Well, they could have explained, so- It was the pithiest version of the common sense rationale I've ever seen. It was pretty short, and if we get back to, if you actually look at the board's decision where they talk about it, it's at APPX6, I believe. Looking at A8. Common sense, exactly. Yeah. It's what they talk about- Doing this modification would be no more than an exercise of common sense, CKSR came over. Exactly, and- For the board to have a sustainable rejection based on common sense, the board needs to say more, perhaps a lot more, especially using something as potentially dangerous of a rationale as the so-called common sense rationale. Yeah, and they did say a little bit more, not a lot more, but if you look at the previous page, they talk about how Ensman is capable of tracking, I'm sorry. They talk about the common sense in APPX8, but they do talk about how in the prior art systems of the fleet vehicles, one of the drawbacks was you had to use this dedicated equipment, like the microprocessor that the requester had, and then you have to use the GPS receiver located in the vehicle, and you had to both purchase and maintain that equipment, and one of the advantages that Ensman talks about, and this is, the examiner and the board both cited to this, is that the invention relieves the burden of having to purchase and maintain that dedicated equipment, and this is the APPX886 in column two, lines nine through 10. Well, then that would be a motivation to modify to make something cheaper and more convenient. I mean, that's maybe one type of common sense, I suppose, but that's not the actual statement here when it comes down to what is the basis for the Ensman alone objection. Yeah, and I think it's also, it's fleshed out a little bit in the examiner's answer, or the final office action. This is the APPX696. Right. They talk about it. Did the board cite A696? I believe so. I mean, I see it cited KSR, I don't see it cited A696. So they're talking, APPX9 of the board's decision where they talk about common sense. In the middle of the page, they do say, thus we agree with the examiner, and they cite to final action six, and that is page eight. 696. Yeah, that's APPX696, and that's where the examiner walks through in more detail the rationale, citing that Ensman explicitly mentions a vehicle tracking system as background art. It emphasizes that the purpose of Ensman is to relieve the requester of the burden of maintaining a tracking system, which suggests centralization that could be applied to that same vehicle tracking system of the prior art. And so they do cite to it. The board could have spelled it out itself in a little more detail, but they do cite to this page, and they say that they agree with the examiner's findings and conclusions. Inside their Ensman plus Davidson discussion, right? Or is it Ensman and, I mean. This is, APPX696, the portion I just read, is just talking about the rejection, or defining that Ensman suggests this limitation. Right, but you have to go to the heading. The heading of 693 says this is an Ensman plus Davidson objection. Yes, and that was one confusing aspect of this case. There is just one rejection in this case, and it's the combination. But they found that this estimating location, estimating the location, the disputed limitation, was both suggested by Ensman alone, and then separately, explicitly taught by Davidson. But the rejection itself is just one rejection based on the combination of Ensman and Davidson. But it's kind of suggested by Ensman alone, and then alternatively, it's obvious based on the combination of combining Davidson's. So, can you affirm here, we're affirming based on Ensman in view of Davidson. We wouldn't be affirming in view of Ensman alone. Correct, correct. So, it's getting a little confusing, exactly what the board was doing. Yeah, I think there's basically just two different ways they found this limitation was met. But if you're comfortable with the finding that Davidson teaches this expressly, and it would be obvious to make that combination, that's a fine basis to affirm the board's decision on its own, without getting into the common sense rationale. So, if there's no further questions, I'll yield the remainder of my time. Thank you. Just a couple minutes here, I think, at most, because we'd be talking ad nauseam over a single paragraph if we do this too much. But I do think it's important to consider the totality of Davidson when you're reading this paragraph. If one were to accept the board's conclusion that paragraph 30 could reasonably be interpreted to mean that the PDA is being used as a proxy for the location of the truck, rather than using the actual sensors that exist on the truck, most of what Davidson is trying to accomplish would be undermined. You lose the ability to track efficiency. You lose the ability to track the driver. You lose all of the things that it talked about. Everything it was trying to achieve goes away. MacroPoint's invention doesn't offer much of anything that Davidson did. It was designed to be a more flexible solution that allowed truck drivers with flip phones to provide their location as a proxy for free. Davidson was a very detailed system trying to improve route planning, improve gas mileage, know exactly where drivers were on their routes at any given time, hopefully avoid accidents, avoid construction. That's what Davidson was about. It was about collecting as much information as possible. Interpreting paragraph 30 as proposed by the board would jettison all that for information that's by definition not as good because everyone knows the driver's not in the car all the time. So now you've taken this goal and thrown it out the window, the entire purpose of the invention. So that's all we have for Davidson here. Thank you. Thank you. We thank both sides for the cases submitted.